## KENNETH MONROE RINGGOLD v. STATE OF MARYLAND

[No. 153, September Term, 1976.]

*Decided December 29, 1976.*

The cause was argued before MENCHINE, MOORE and LISS, JJ.

*Victoria Salner, Assistant Public Defender*, with whom was *Alan H. Murrell, Public Defender*, on the brief, for appellant.

*John A. Austin, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Edwin H. W. Harlan, Jr., State's Attorney for Harford County*, and *Peter C. Cobb, Assistant State's Attorney for Harford County*, on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

In this case, the State attempted to cure a severe case of "convenient amnesia" by administering the nostrum of "past recollection recorded." The remedy, like Dr. Raven's Miracle Snake Oil Elixir, did not cure the disease.

The appellant, Kenneth Monroe Ringgold, was convicted by a jury in the Circuit Court for Harford County (Dyer, J., presiding) of robbery with a deadly weapon and the use of a handgun in the commission of a crime of violence. Sentences were imposed, and it is from these judgments that this appeal was timely noted.

On May 14, 1974, Norman Joyner and Luther Scroggins robbed a pharmacist at gunpoint and were caught in *flagrante delicto* as they attempted to flee from the pharmacy premises. Guilty pleas were entered on their behalf and sentences were imposed. The appellant, who was tried separately, was allegedly the driver of the getaway car used in the commission of the crime.

At the appellant's trial, Police Officer Montville testified that he and his partner had responded to an alarm and arrested Joyner and Scroggins as they ran out of the store. After making the arrests the officer was approached and given some information by Eleanor Brammer, a nurse at the Harford Memorial Hospital which was located immediately across from the drugstore. Mrs. Brammer testified that she told the officer that she had observed a black Volkswagen with three black males in it drive down an alley to the rear of the drugstore; that she saw two of the men get out and go into the drugstore. She walked toward the store and by the time she got there the police were holding in custody the two black males whom she had seen leave the car. She told the officers "there was a fellow still in the black Volkswagen at the exit door of the Apothecary Shoppe." Armed with this information one of the officers went to the rear of the premises and observed a black Volkswagen which was unattended. The officer then saw the appellant get into the car and attempt to start it. The officer stopped the appellant, advised him that he was investigating an armed

robbery, and requested the appellant to accompany him to the police station, which he did. Later the appellant was charged as a participant in the crime.

Arlene Joyner, the appellant's mother-in-law, had been summoned as a witness for the State. At the end of the first day of trial, when the Court advised all witnesses in the courtroom that they would be required to report the next morning, Arlene Joyner asked the Court, "Why do I have to testify against my son-in-law, because you know I ain't going to tell the truth?" As a result of this statement, the trial court held a hearing the next morning out of the presence of the jury. At that hearing an Officer Way testified that he had obtained from Mrs. Joyner on May 21, 1974 a statement to the effect that her son, Norman, and the appellant had left her house on the morning of the robbery in a black Volkswagen. The signature "Arlene Joyner" appeared at the bottom of the statement.

Arlene Joyner then testified for the purposes of the hearing only. She explained that her statement the previous day meant — "if I had to say anything to hurt [appellant], I wouldn't do it." She stated that she would tell the truth but that she did not remember what she had talked about with the officer, nor did she remember what had occurred on the crucial date of May 14. She did not know whether the statement was true, nor could she remember giving or signing it. Given this information, the Court, exercising its discretion, called Mrs. Joyner as its own witness.

The jury was recalled and the Court explained to them that Mrs. Joyner was being called as the Court's witness because the State which had summoned her could not vouch for her veracity. The Court also explained that this action by the Court would permit both the State and defense to cross-examine the witness. Mrs. Joyner was then called to the stand, sworn and some preliminary questions were asked of her by the Court. The questioning was then turned over to the State's Attorney who was unsuccessful in eliciting from her what had occurred on the morning of May 14. She insisted that she could not remember what had happened that day. The State then showed her the

statement, and although she admitted the signature on it "looks like mine," she denied any memory of its contents or the facts recited in it. She was then requested to read the statement to herself, which she did, but claimed that this did not refresh her recollection and insisted that she could not vouch for the truth of the statement. The State in an effort to refresh her memory then attempted to cross-examine the witness by reading the specific questions and answers contained in the statement, but defense counsel objected, and the Court sustained the objection on the ground that it would be too prejudicial to the defendant to permit a question by question denial of recollection by the witness. Throughout the State's cross-examination Mrs. Joyner contended that she did not remember signing the statement because she was upset; she would only admit that the signature on the statement looked like hers.

Officer Way was then called to the stand as a witness for the State. He testified that he had taken a statement from Mrs. Joyner in which he had asked her certain questions which she answered, and that he had typed the statement which she then signed. After argument out of the presence of the jury, the Court ruled that the statement taken by Officer Way could be read to the jury and accepted as substantive evidence in the case. It is this ruling which presents the sole issue to be decided on appeal.

The appellant vigorously urged that the admission of the statement as substantive evidence was reversible error. We agree and shall reverse.

The complexities of the laws of evidence surrounding the question of the admissibility or the use to be made, if any, of Mrs. Joyner's statement lead us into two different areas of discussion. The State first attempted to use the statement to refresh Mrs. Joyner's present recollection. In a discussion of this facet of the law of evidence in *Wilson v. State*, 20 Md. App. 318, 329-330, 315 A. 2d 788, 794 (1974), Judge Moore said:

> "Putting the best face on the State's use of Craig's affidavit, as well as, we think, of Tuck's, it

appears that we are confronted with a situation considerably more closely akin to that of a party using a prior statement to refresh a witness' present recollection. In Underhill, *Criminal Evidence* § 499 (5th ed. 1956), it is said:

'It sometimes happens that state witnesses, who have given written statements, become unwilling, forgetful, or evasive when called upon to testify. In such case the prosecuting attorney, sometimes claiming surprise, may call the witness' attention to the prior statement, not so much for the purposes of impeachment but to refresh the witness' recollection.'

Similarly, Wharton, *Criminal Evidence* § 849 (12th ed. 1955), states:

'The court may, in its discretion, permit a party to put questions to his witness on direct examination to refresh his recollection, by directing his attention to a particular matter or asking questions relating to prior statements or prior testimony, or by reading to him his prior testimony or portions therefrom, especially when it appears that the witness is unfriendly toward the party calling him, or is trying to evade the questions put to him.'

Although here the State was engaged not in direct examination but in cross-examination of Tuck and Craig, cross-examination to refresh a witness' recollection on the basis of prior statements may be permitted. Its propriety lies largely within the sound discretion of the trial judge. 3 Wigmore, *supra,* § 764; *see United States v. Baratta,* 397 F. 2d 215 (1968); *Young v. United States,* 214 F. 2d 232 (1954).

Yet from the quite legitimate (and here successful) use of the prior statements of Tuck and

Craig by the State to refresh their memory or 'awaken their conscience,' *People v. Malston*, 258 N.E.2d 362, 365 (Ill. 1970), the State can take no comfort, for the affidavits should not have been received in evidence over appellant's objection. As stated in Wharton, *Criminal Evidence* § 416 (13th ed. 1973): 'Since it is the witness' present recollection, not the memorandum, which is the evidence, the memorandum itself is not admissible, nor may the contents thereof be read to the jury. But such a memorandum is admissible in evidence when introduced by opposing counsel.' And as Wigmore has it: 'That the *offering party* has not the right to treat it as evidence, by reading it or showing it or handling [sic] it to the jury, is well established.' 3 Wigmore, *supra*, § 763. *See also* Underhill, *supra*, § 499; 82 A.L.R.2d 473; *Hubbard v. State*, 2 Md. App. 364, 234 A. 2d 775 (1967); *Bulluck v. State*, 219 Md. 67, 148 A. 2d 433 (1959)." (Footnote omitted)

The State, frustrated in its effort to get the details of the statement before the jury by impeaching the Court's witness, offered the statement as evidence of a past recollection recorded. The Court admitted the statement on that basis and permitted it to be read to the jury as substantive evidence.

An early discussion of the rules of evidence governing past recollection recorded is found in *Martin v. Good*, 14 Md. 398, 410 (1859), quoting from 1 Greenleaf, *Evidence*, sec. 437:

" 'Where the writing neither is recognized by the witness as one which he remembers to have seen before, nor awakens his memory to the recollection of any thing contained in it, but nevertheless, knowing the writing to be genuine, his mind is so convinced that he is, on that ground, enabled to swear positively to the fact,' the testimony will be received. The examples put show the reasonableness of the doctrine, and that the ends of

justice require it to be so. A more recent author, whose conclusions, we think, are generally sustained by the authorities, states the English doctrine substantially in the same way. *Powel on Evidence*, 308, in 96 *Law. Lib.*, 119. Here the witness stated, that from the paper being in his own handwriting, he had no doubt it did contain the true terms of the agreement made in his presence, and upon cross-examination he gave, in effect, the same testimony."

It is extremely important to note that after verification the record of past recollection recorded used by a witness becomes *his present evidentiary statement*. It may then be admitted into evidence either as part of his direct testimony or cross-examination.

This Court in *Askins v. State*, 13 Md. App. 702, 709-710, 284 A. 2d 626, 630 (1971), discussed the distinction to be made between the use of a memorandum to revive present recollection and the admission into evidence of a memorandum of a past recollection recorded:

"Past recollection recorded is where 'a witness, who is either devoid of a present recollection or possessed of an imperfect present recollection, desires to use a past recollection. This he proposes to do by employing some record of his past recollection.' *Wigmore on Evidence* (3rd Ed.), Section 734. The authorities are in general agreement, as to past recollection recorded, that to introduce the memorandum into evidence there must be a showing that the witness identifies the memorandum as made immediately after or contemporaneously with the event and that the memorandum is a correct statement of those facts which the witness recorded. *Wigmore, supra*, Section 734-747; *Hall v. State*, 223 Md. 158, 176; 125 A.L.R. 3; 82 A.L.R.2d 465. Stated succinctly, in order to introduce past recollection recorded, the general rule is that it is necessary to adduce from

the witness '(a) that he at one time had personal knowledge of the facts, (b) that the writing was, when made, an accurate record of the event, and (c) that after seeing the writing, he has not sufficient present independent recollection of the facts to testify accurately in regard thereto.' *Kinsey v. Arizona,* 49 Ariz. 201, 65 P. 2d 1141 at 1148, cited with approval in *Hall v. State, supra,* at 173."

In the later case of *Edwards and Person v. State,* 31 Md. App. 562, 358 A. 2d 590 (1976), this Court restated the requirements of the foundation to be laid to make it clear that it was *not* necessary that a lack of present recollection be established before a writing might be used as a past recollection recorded. *Hall v. State, supra; Glazier v. State,* 30 Md. App. 647, 353 A. 2d 674 (1976).

The crux of this case, however, is that the past recollection recorded if it is to be admitted into evidence must be offered by the *witness* who is either devoid of a present recollection or possessed of an imperfect present recollection and *desires* to use a memorandum of a past recollection. The witness must be able to assert now that the record correctly represented his knowledge and recollection at the time of making. 3 J. Wigmore, *Evidence* §§ 734, 746(2) (Chadbourne rev. 1970).

In each of the cases we have cited it is the *witness* who verified the genuineness and accuracy of the facts recited in the memorandum. When the recollection of a witness is not refreshed by reference to the memorandum, but he recalls the memorandum and recalls that it was accurate when made or he recognizes the signature on the statement as his and testifies positively that he would not have signed the statement had he not believed it to be true at the time, he may testify from the memorandum or it may be received into evidence in connection with his direct examination or in cross-examination. 82 A.L.R.2d 473 (1962). In this case, however, the witness professed to have no recollection of the statements allegedly made by her to the officer. While it seems clear that this was a deliberate prevarication by the

witness, there still was no adequate foundation upon which the statement could be admitted into evidence as past recollection recorded.

In the old carny tradition, we can only say to the assistant State's Attorney, "Good try son, but no cigar." The admission of the statement as substantive evidence was reversible error.

*Judgments reversed.*
*Case remanded for new trial.*
*Costs to be paid by Harford County.*