# CLARENCE MOUZONE v. STATE OF MARYLAND

[No. 26, September Term, 1981.]

*Decided November 4, 1981.*

The cause was argued before LISS, MACDANIEL and WEANT, JJ.

*Michael R. Malloy, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Ann E. Singleton, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *James Salkin, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

Clarence Mouzone, appellant, was charged with two counts of murder, two counts of use of a handgun in the commission of a felony, and two counts of carrying a handgun. The appellant was tried before a jury in the Criminal Court of Baltimore and convicted on all charges. A motion for a new trial was filed and denied. Appellant was thereupon sentenced to two consecutive life terms on the murder charges; two fifteen year sentences, to run concurrent with each other but consecutive to the life terms on the murder convictions; and two concurrent three year sentences on the carrying a handgun charges, which were to run concurrent with the other sentences. From these judgments, appellant noted this appeal. He raises eight issues to be determined by this Court:

I. Whether the trial court erred by admitting in evidence the alleged past recollection recorded statement of Anna Byrd which contradicted her testimony at trial?

II. Whether the trial court erred by admitting Anna Byrd's prior recorded statement because it was involuntary and completely unreliable?

III. Whether the trial court erred by admitting in evidence Anna Byrd's testimony about her prior testimony before the grand jury?

IV. Whether the trial court erred by allowing appellant to be questioned concerning his prior grand jury testimony?

V. Whether the trial court erred by denying appellant's motion for judgments of acquittal because the evidence was insufficient?

VI. Whether the trial court erred by allowing the prosecutor to make prejudicial arguments to the jury?

VII. Whether the trial court erred by failing to make an effort to find Alan Glass who was named as the actual assailant at trial?

VIII. Whether appellant's trial counsel adequately investigated appellant's case and adequately represented appellant in this case?

## I. and II.

At trial, officer Michael Sabo of the Baltimore City Police Department testified that at approximately 2:08 p.m., on August 31, 1979, he responded to a call at the corner of North Avenue and North Charles Street. Upon arrival, he found the bodies of Bernard Banks and Carolyn Williams on the sidewalk. He also observed Anna Byrd on the sidewalk, apparently having an epileptic seizure. At trial, Anna Byrd was called to testify as a state's witness. She testified that on the afternoon of the shooting she was in the vicinity of North Avenue and Charles Street with her friend, Carolyn Williams. She stated that she heard one shot and saw a man run from the scene. She thereupon suffered an epileptic seizure, was taken to the hospital, treated and released. She

was then taken to police headquarters where she was questioned by Detective Danko of the Homicide Division. Detective Danko showed her an array of photographs, one of which she identified as appellant, the man she saw running from the scene. Anna Byrd signed her name on the back of the photograph she selected, dated it, and indicated the time of day on it. Officer Danko then took a statement from Mrs. Byrd which contained the following description of appellant: the man [she saw running from the scene] was a black male, approximately 23 years old, dark brown skin complexion, 5'4" to 5'6", 135 pounds, slender build, wearing a maroon print shirt, maroon dress slacks and black shoes. His hair was cut short.

After Mrs. Byrd read the statement as written out by Detective Danko, she signed it as being true and correct. She also noted the date and time on the photograph as August 31, 1979 at 7:20 p.m.

At trial, Mrs. Byrd repudiated her selection of the appellant's photograph as the picture of the man who was the "shooter" who ran from the scene. She insisted she had been mistaken and that the appellant was not the man. The state then offered the statement taken from her on the day of the shooting on the ground that although it was hearsay, it was admissible as past recollection recorded and therefore could come into evidence as one of the exceptions to the hearsay rule. Appellant objected and a hearing out of the presence of the jury was then conducted. At the conclusion of the hearing, the statement was admitted as admissible evidence on the basis of "past recollection recorded." It is this ruling which appellant contends was the initial error in this case.

In considering the admissibility of evidence, the law vests great discretion in the trial judge. The exercise of that discretion will not be reversed absent a showing of clear abuse. *See Tripp v. State,* 36 Md. App. 459, 374 A.2d 384, *cert. denied,* 281 Md. 745 (1977).

Our careful examination of the transcript in this case convinces us that the trial judge arrived at the correct conclusion, but for the wrong reason, in allowing Mrs. Byrd's

statement to Detective Danko to be received into evidence. At the hearing, out of the presence of the jury, appellant's counsel argued that the statement was not admissible under the exception to the hearsay rule known as "past recollection recorded." The trial judge ruled that the statement was admissible on that basis.

We said in *Ringgold v. State,* 34 Md. App. 286, 367 A.2d 35 (1976):

> [T]he past recollection recorded if it is to be admitted into evidence must be offered by the *witness* who is either devoid of a present recollection or possessed of an imperfect present recollection and *desires* to use a memorandum of a past recollection. The witness must be able to assert now that the record correctly represented his knowledge and recollection at the time of making. 3 J. Wigmore, *Evidence* Sections 734, 746(2) (Chadbourne rev. 1970). [34 Md. App. at 293.]

The crucial facts which make a past recollection recorded admissible as an exception to the hearsay rule are that the record must be offered by the *witness* who has *no* recollection of the facts recorded *or an imperfect present recollection* and desires to use the memorandum of a past recollection. It is important to note that under these circumstances, once verification has been established, the memorandum becomes the *present evidentiary statement* of the witness and may be admitted into evidence either as a part of the witness' direct testimony or his cross-examination.

In this case the statement sought to be admitted was not offered by Mrs. Byrd. She acknowledged remembering the circumstances surrounding the giving of the statement to Detective Danko, admitted signing it, and reluctantly conceded that she believed it to be true when she made the statement. However, she repudiated her identification of the appellant's photograph and insisted that the appellant was not the man who ran past her on the day of the murders and was not the man whom she described to Detective Danko. In the light of this testimony it is clear to us that the statement

could not be admitted as evidence of "past recollection recorded."

There is, however, another exception to the hearsay rule which makes the statement admissible. This exception is known as the "excited utterances" rule, also cited as the "res gestae" rule.

In *Moore v. State,* 26 Md. App. 556, 338 A.2d 344 (1975), Judge Moylan, speaking for this Court, indicated that the acceptance of these declarations arise out of two factors which combine to justify the admission of certain classes of hearsay: (1) necessity; and (2) the circumstantial probability of trustworthiness. Necessity arises out of the "superior trustworthiness" of the spontaneous declarations. Dean Wigmore, in discussing the "General Principle of the Exception," stated it to be as follows:

> This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts. [3 J. Wigmore, *Evidence* Section 1747.]

Upon examination of the facts surrounding the selection of the appellant's photograph and the statement made by Mrs. Byrd, we are convinced that the circumstances justify the admission of these facts as a spontaneous response to the

occurrence of events. Mrs. Byrd responded with an epileptic seizure to the shock of seeing her friend gunned down. She was then admitted to the hospital where she was treated and released to the police. At police headquarters she was shown an array of photographs from which she selected that of the appellant, and she then made a statement giving a description of the man who ran past her, fleeing from the scene. When the police began to question her she was crying and upset. She composed herself during the interim, and the statement was signed as being true and correct within less than three hours after the perpetration of the double murders. We conclude, therefore, that the statement and the evidence as to the selection of the photograph were admissible as part of the excited utterances surrounding the occurrence of the event.

We also reject the argument that Mrs. Byrd's in-court repudiation of her written statement and her claim under oath that she was mistaken in her original identification of appellant render the written statement inadmissible. At most, this merely raised issues of fact to be weighed by the jury. They resolved the conflict by finding the appellant guilty beyond a reasonable doubt as to each of the charges against him.

The lapse of time between the commission of the murders (at 2:00 p.m.) until the identification of the appellant by photograph was three hours. Included was the time required to take the witness from the scene to the hospital to administer treatment for her epileptic seizure, to release and transport her to police headquarters, to submit the photos for her identification and to have her select the photograph which she identified. It is indubitable that this sequence of events was contemporaneous with the commission of the crime. The Court of Appeals, in *Stevens v. State,* 232 Md. 33, 192 A.2d 73, *cert. denied,* 375 U.S. 886, 84 S.Ct. 160, 11 L.Ed.2d 115 (1963), held that a time lapse of two hours did not make a res gestae statement inadmissible. In approving the admission of such a statement into evidence, the Court quoted with approval from *Wilson v. State,* 181 Md. 1, 26 A.2d 770 (1942):

> Evidence of declarations and acts, which are an immediate accompaniment of the act charged and so closely connected with the main fact as to constitute a part of it, and without which the main fact might not be properly understood, are admissible as a part of the *res gestae*. The test as to whether a declaration or act offered in evidence is part of the *res gestae* is whether it was contemporaneous with the commission of the crime and so connected with it as to illustrate its character. Whether such a declaration or act is an immediate accompaniment is tested, not by the closeness of time, but by casual [causal] connection. A definite limit of time cannot be arbitrarily fixed for the reason that so long as the main transaction continues, declarations and acts emanating from it become a part of it. [citations omitted.] [232 Md. at 40.]

Appellant, in his second ground, complains that Mrs. Byrd's statement should not have been admitted into evidence because the statement was involuntarily made and therefore unreliable. Appellant has cited no authority for the proposition that a witness' written statement is inadmissible if it is not voluntarily given. Appellant was entitled to and did present to the jury all of the facts surrounding the making of Mrs. Byrd's statement. The triers of the fact had the responsibility of determining the weight to be given to Mrs. Byrd's statement and the credibility of her identification of the appellant's photograph. *See Perkins v. State,* 11 Md. App. 527, 275 A.2d 517 (1971). As the trial judge pointed out, Mrs. Byrd read the statement, signed it, dated it and stated that it was true and correct at the time it was made. The lurid version of the witness as to the circumstances under which the statement and identification were made was denied by the detective. It was then for the jury to weigh the credibility to be given to the statements made by Mrs. Byrd. The jury chose to believe that the statements made to Detective Danko were true and we decline to disturb their decision.

The Court of Appeals has on a number of occasions considered the admissibility of hearsay testimony by a police officer concerning an out of court photographic identification by a witness. In *Basoff v. State,* 208 Md. 643, 119 A.2d 917 (1956), the Court stated:

> [W]e accept the rule that where it appears that the prosecuting witness had identified the accused prior to the trial under circumstances precluding suspicion of unfairness or unreliability, the prior identification is admissible in evidence. We think it is evident that an identification of an accused made by a witness for the first time in the courtroom may often be of little testimonial force, as the witness may have had opportunities to see the accused and to have heard him referred to by a certain name; whereas a prior identification, considered in connection with the circumstances surrounding its making, serves to aid the court in determining the trustworthiness of the identification made in the courtroom. *State v. Frost,* 105 Conn. 326, 135 A. 446; *Revill v. State,* 210 Ga. 139, 78 S.E.2d 12; *People v. Branch,* 127 Cal.App.2d, 438, 274 P.2d 31. [208 Md. 650-51.]

*See Johnson v. State,* 237 Md. 283, 206 A.2d 138 (1965); *Proctor v. State,* 223 Md. 394, 164 A.2d 708 (1960); *Judy v. State,* 218 Md. 168, 146 A.2d 29 (1958).

### III.

Appellant next suggests that the trial judge erred in permitting Mrs. Byrd to be asked whether her testimony before the grand jury was the same as what was contained in the statement she gave on the day of the incident. The answer was "yes." No other questions concerning her grand jury testimony were permitted to be answered by the witness. Appellant contends the question permitted to be answered was reversible error because it was beyond the scope of either direct or cross-examination and because it

violated the secrecy of the grand jury proceedings. We find the first ground specious since it is clear from the record that the question of the credibility of Mrs. Byrd's statement and identification was thoroughly explored in both her direct and cross-examination. The second ground equally has no merit. Revelation of grand jury testimony, where relevant, in the impeachment of a witness does not violate the secrecy of the grand jury. *See Kirk v. Garrett,* 84 Md. 383, 35 A. 1089 (1896). The Federal Courts have permitted the introduction of grand jury testimony as substantive evidence where inconsistency results from a witness' fear or reluctance to testify at trial which subsequently leads to no trial testimony or repudiation of prior statements. *See United States v. Myers,* 626 F.2d 365 (4th Cir. 1980); *Garner v. United States,* 574 F.2d 1141 (4th Cir. 1978). We find no error in the decision of the trial court which permitted Mrs. Byrd to be asked the sole question as to whether her testimony before the grand jury was the same as the facts recited in her written statement.

## IV.

Appellant next contends that the trial judge erred in permitting appellant to be cross-examined concerning his testimony before the grand jury on the ground that this violated grand jury secrecy. We do not agree. Appellant cites in support of his position *Silbert v. State,* 12 Md. App. 516, 280 A.2d 55 (1971). We note, however, that *Silbert* stated in obiter dicta that the policy of secrecy of the grand jury minutes does not extend to the prosecutor, and that he is afforded access to such minutes to assist him at the trial. Such a policy constitutes no reversible error.

The issue raised here as to whether a defendant or any witness may be impeached by his own grand jury testimony appears to be one of first impression in Maryland. It is well established that witnesses may be impeached by prior testimony given under oath. *See Gray v. State,* 43 Md. App. 238, 403 A.2d 853 (1979) (suppression hearing); *Harrod v. State,* 39 Md. App. 230, 384 A.2d 753 (1978) (preliminary hearing).

*See also Moore v. United States,* 429 U.S. 1007, 97 S.Ct. 1140, 51 L.Ed.2d 560 (1977); *United States v. Malkis,* 550 F.2d 180 (4th Cir. 1976). Other jurisdictions have extended this rule to include grand jury testimony. *See State v. Piskorski,* 177 Conn. 677, 419 A.2d 866 (1979); *Gregory v. United States,* 393 A.2d 132 (D.C. App. 1978); *People v. DiNapoli,* 316 N.Y.2d 622, 265 N.E.2d 449 (1970).

8 Wigmore, *Evidence* [McNaughton Rev. Ed. 1961] Section 2363, unequivocally states the rule to be as follows:

> It is now universally conceded that a witness may be impeached in any subsequent trial, civil or criminal, by self-contradictory testimony . . . given by him before the grand jury. [*Id.,* at 739.]

We think the issue here raised is disposed of by *Kirk v. Garrett, supra,* where the Court of Appeals found no violation of the grand juror's oath of secrecy when a grand juror was called to prove that a witness swore in the grand jury differently from what he had sworn before the petit jury.

## V.

Appellant further contends that the trial court erred in denying appellant's motions for judgments of acquittal because of the insufficiency of the evidence against him. We have carefully reviewed the record in this case and find that after viewing the evidence in the light most favorable to the prosecution, there was no abuse of discretion by the trial judge in denying the motions for judgment of acquittal and there was more than sufficient evidence to support the jury's determination that the appellant was guilty beyond a reasonable doubt of each of the charges brought against him. *Tichnell v. State,* 287 Md. 695, 415 A.2d 830 (1980).

## VI.

Appellant in his brief has set out several remarks of the prosecutor in his closing argument which he argues were prejudicial. We note no objection was made to any of these

remarks at trial and the issue was first raised at appellant's motion for a new trial. As a result, the trial court was deprived of any opportunity to take such remedial steps to correct the prejudice, if it did in fact exist. The failure to object has not preserved this issue for appellate review. *See* Maryland Rule 1085; *Holbrook v. State,* 6 Md. App. 265, 250 A.2d 904 (1969). Appellant did not raise this issue until a hearing on a motion for a new trial. At that hearing, the trial court considered appellant's arguments and found that the remarks were not prejudicial. In light of this, we find no exceptional circumstances which would require us to overrule the decision of the trial court in these matters. *See Couser v. State,* 36 Md. App. 485, 374 A.2d 399, *aff'd,* 282 Md. 125, 383 A.2d 389, *cert. denied,* 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 156 (1978).

## VII.

In the course of the trial, one Alan Glass was accused by one of the state's witnesses of being the man who committed these murders. Appellant suggests that it was the court's responsibility to summons Glass and produce him at the trial. This contention is too ridiculous to merit answer. The record does not disclose any effort by the defendant or his counsel to summons Glass. It actually discloses that the defendant specifically refused an opportunity to request a summons for Glass. We find no obligation on the trial court to act as co-counsel for the defense or prosecution.

## VIII.

Finally, appellant states a long list of grievances against his trial counsel and contends that the trial court erred when it refused to grant a new trial because of the errors and inadequacies of counsel. An accused is entitled to a new trial because of inadequate representation of counsel only when that representation is so deficient as to go to the very fairness of the trial. *Anderson v. State,* 3 Md. App. 362, 239 A.2d 579 (1968). Whether to grant a new trial on these

grounds is discretionary with the trial court, *Turner v. State,* 45 Md. App. 168, 411 A.2d 1094 (1980), and such a ruling will not be disturbed on appeal except for the most extraordinary and compelling reasons. *Couser v. State, supra.* The trial court found that defense counsel was totally prepared and totally committed to appellant's defense and we find nothing in the record to contradict that conclusion.

*Judgments affirmed, costs to be paid by appellant.*