728 So.2d 1153 (1998)
Ex parte State of Alabama.
In re Jeffery Carl LINDLEY[*]
v.
STATE.
1961992.
Supreme Court of Alabama.
September 11, 1998.
As Modified on Denial of Rehearing November 20, 1998.
*1154 Bill Pryor, atty. gen., and Beth Slate Poe, asst. atty. gen., for petitioner.
Jeffery Carl Lindley, respondent, pro se.
PER CURIAM.
Jeffery Carl Lindley was convicted of one count of first-degree assault, three counts of second-degree assault, and one count of the criminal use of a noxious substance. Those convictions arose out of charges that he threw a tear gas bomb into a residence occupied by two adults, a three-year-old child, and a three-week-old infant. Lindley appealed his convictions to the Court of Criminal Appeals. That court reversed the convictions and rendered a judgment in Lindley's favor. Lindley v. State, 728 So.2d 1150 (Ala. Crim.App.1997). We granted the State's petition for certiorari review. We affirm the judgment of the Court of Criminal Appeals in part, reverse it in part, and remand.

I.
The only evidence connecting Lindley to the crimes consisted of a statement made to an investigating officer by Billy Joe Scott, a friend of Lindley's, in which Scott stated that Lindley had told him he had thrown the tear gas bomb. At trial, however, Scott testified that he did not remember anything about the period of time during which the crimes were committed. The prosecutor then showed Scott a copy of the statement he had made. Scott testified that he recognized his signature on the statement, but said that on the date listed on the statement, and for several days before that date, he had been drunk, and he said he presently did not remember anything about the events described in the statement. He further testified that he did not remember making the statement or talking to the investigating officer.
*1155 The Court of Criminal Appeals concluded that Scott's prior inconsistent statement was admissible as a prior out-of-court statement and, therefore, that the statement was admissible only to impeach Scott's testimony, not as substantive evidence of Lindley's guilt. That court also concluded that Scott's statement was not admissible pursuant to the past-recollection-recorded exception to the hearsay rule. The Court of Criminal Appeals held that the trial court erred in overruling Lindley's motion for a judgment of acquittal and, without addressing the question of double jeopardy, it rendered a judgment for Lindley instead of remanding for a new trial. 728 So.2d 1150.
The State argues: (1) Previous opinions of the United States Supreme Court and of Alabama appellate courts require that the judgment in this case be reversed and the case remanded, not that a judgment for the defendant be rendered; the State says that aspect of the Court of Criminal Appeals' opinion rendering a judgment for Lindley conflicts with Lockhart v. Nelson, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988); Zinn v. State, 527 So.2d 148 (Ala.1988); and Mayo v. City of Rainbow City, 642 So.2d 524 (Ala.Crim.App.1994). (2) Any error in admitting Scott's statement was cured when admissible evidence regarding the statement was presented by the investigating officer. (3) The Court of Criminal Appeals misinterpreted the doctrine of past recollection recorded.

II.
We first address the issues regarding the admissibility of the evidence. The Court of Criminal Appeals correctly held that Scott's prior inconsistent statement could not be used as substantive evidence of Lindley's guilt. See Hooper v. State, 585 So.2d 137 (Ala.1990), cert. denied, 503 U.S. 920, 112 S.Ct. 1295, 117 L.Ed.2d 517 (1992). The State argues, however, that the investigating officer's testimony about Scott's statement to him was admissible and cured any error in the admission of the statement into evidence. As the Court of Criminal Appeals noted, however, "where a nonparty witness denies having made a prior statement, the alleged statement cannot be shown from the testimony of other witnesses. Carroll v. State, 473 So.2d 1219, 1225 (Ala.Cr.App.1985)." Lindley v. State, 728 So.2d at 1151.
The Court of Criminal Appeals also correctly held that Scott's statement was not admissible as a past recollection recorded. Although the State argues that Scott should not be allowed to evade his responsibility to testify against his friend by claiming to have been drunk when he gave his statement to the investigating officer, Scott did not testify at trial that he personally observed the facts referred to in the writing or that at the time the statement was made he knew of its contents and knew them to be true. Testimony to that effect is required before a statement can be admissible under the doctrine of past recollection recorded. See C. Gamble, McElroy's Alabama Evidence, § 116.03 at 528-33 (5th ed.1996).
Our sister State of Maryland has examined a question similar to the one now before us. In Ringgold v. State, 34 Md.App. 286, 367 A.2d 35 (Ct.Spec.App.1976), the State attempted to cure a witness's "convenient amnesia" by utilizing the doctrine of past recollection recorded. Ringgold was accused of robbing a pharmacy. Approximately a week after the robbery, his mother-in-law, Arlene Joyner, gave a statement to a police officer in which she said that on the morning of the robbery her son and Ringgold had left her house in a black Volkswagen. A black Volkswagen had been observed at the scene of the robbery. At the trial, Joyner stated that she did not remember what she had talked about with the officer, did not remember what had occurred on the day of the robbery, and could not remember giving or signing the statement. When the prosecutor showed Joyner her signed statement, she admitted that the signature looked like hers, but testified that seeing the statement did not refresh her recollection and that she could not testify as to its truthfulness. She contended that she did not remember signing the statement, because, she said, she had been upset. The Ringgold court examined the history of the doctrine of past recollection recorded, but concluded that that doctrine did not apply to *1156 allow Joyner's statement to be admitted into evidence. The court stated:
"When the recollection of a witness is not refreshed by reference to the memorandum, but he recalls the memorandum and recalls that it was accurate when made or he recognizes the signature on the statement as his and testifies positively that he would not have signed the statement had he not believed it to be true at the time, he may testify from the memorandum or it may be received into evidence in connection with his direct examination or in cross-examination. In this case, however, the witness professed to have no recollection of the statements allegedly made by her to the officer. While it seems clear that this was a deliberate prevarication by the witness, there still was no adequate foundation upon which the statement could be admitted into evidence as past recollection recorded."
34 Md.App. at 293-94, 367 A.2d at 39.
We conclude that, even though Scott's inability to recall his prior statement is suspicious, the fact remains that the State could not elicit the foundation necessary to admit his statement as a past recollection recorded.

III.
We now address the issue whether double jeopardy considerations prevent the State from retrying Lindley. The State insists that even if Scott's statement to the investigating officer is inadmissible, the Court of Criminal Appeals should not have rendered a judgment for Lindley because, it argues, the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States does not bar a retrial in this case.
The Double Jeopardy Clause provides:
"No person shall ... be subject for the same offense to be twice put in jeopardy of life or limb...."
The Double Jeopardy Clause is made applicable to the states through the Due Process Clause of the Fourteenth Amendment.[1]Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The Supreme Court of the United States has interpreted the Double Jeopardy Clause to provide three separate protections to criminal defendants. First, it protects against multiple punishments for the same offense. United States v. Benz, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931). Second, it protects against a second prosecution for the same offense after a conviction. Ex parte Nielsen, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889). Third, it protects against a second prosecution for the same offense after the trier of fact acquits the defendant. Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). Accord North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), overruled on other grounds, Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).
With respect to an appellate court's reversal of a conviction, the Supreme Court long has embraced the general rule that when a reversal is based on a procedural trial error, the Double Jeopardy Clause does not bar retrial. United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). The Supreme Court has provided a narrow exception to the general rule allowing retrial. Where a conviction is reversed solely on the basis of insufficiency of the evidence, retrial is barred because such a reversal is equivalent to an acquittal by the trial court. Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).
In Lockhart v. Nelson, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988), the Supreme Court considered whether the Double Jeopardy Clause barred a retrial when an appellate court's correction of a trial error involving an evidentiary ruling renders the remaining evidence insufficient to support the conviction. In Lockhart, the defendant was sentenced under Arkansas's Habitual Felony Offender Act, under which the defendant could receive an enhanced sentence upon proof of four prior felony convictions. *1157 Id. at 34-35, 109 S.Ct. 285. The State presented certified copies of four prior felony convictions. Id. at 36, 109 S.Ct. 285. Several years later, on federal habeas corpus review, it was discovered that as to one of the convictions the defendant had been pardoned by the Governor, thus vitiating that conviction's legal effect with respect to sentencing the defendant under the Habitual Felony Offender Act. Id. The United States District Court for the Eastern District of Arkansas held that "the Double Jeopardy Clause prevented the State from attempting to resentence [the defendant] as a habitual offender," and the United States Court of Appeals for the Eighth Circuit affirmed. Id. at 37, 109 S.Ct. 285.
On certiorari review, the Supreme Court recognized that although the Double Jeopardy Clause bars retrial when a conviction is reversed solely on the basis of an insufficiency of the evidence, it does not bar retrial when a conviction is reversed based on trial error:

"Burks was careful to point out that a reversal based solely on evidentiary insufficiency has fundamentally different implications, for double jeopardy purposes, than a reversal based on such ordinary `trial errors' as the `incorrect receipt or rejection of evidence.' 437 U.S., at 14-16, 98 S.Ct. 2141. While the former is in effect a finding `that the government has failed to prove its case' against the defendant, the latter `implies nothing with respect to the guilt or innocence of the defendant,' but is simply `a determination that [he] has been convicted through a judicial process which is defective in some fundamental respect.' Id. at 15, 98 S.Ct. 2141 (emphasis added [in Lockhart]).
"It appears to us to be beyond dispute that this is a situation described in Burks as reversal for `trial error'the trial court erred in admitting a particular piece of evidence, and without it there was insufficient evidence to support a judgment of conviction. But clearly with that evidence, there was enough to support the sentence.... The basis for the Burks exception to the general rule [of allowing retrial after trial error] is that a reversal for insufficiency of the evidence should be treated no differently than a trial court's granting a judgment of acquittal at the close of all the evidence. A trial court in passing on such a motion considers all of the evidence it has admitted, and to make the analogy complete it must be this same quantum of evidence which is considered by the reviewing court."

Lockhart, 488 U.S. at 40-42, 109 S.Ct. 285 (quoting Burks, 437 U.S. at 14-16, 98 S.Ct. 2141) (last emphasis added; other emphasis in Lockhart).[2] Thus, the Supreme Court held that "where the evidence offered by the State and admitted by the trial court whether erroneously or notwould have been sufficient to sustain a guilty verdict, the Double Jeopardy Clause does not preclude retrial." Id. at 34, 109 S.Ct. 285.
In Lockhart, the Supreme Court rejected a hindsight approach under which an appellate court could retroactively exclude evidence and bar retrial if the remaining evidence was insufficient to support the conviction. Compare Lockhart, 488 U.S. at 40-42, 109 S.Ct. 285, with id. at 42-50, 109 S.Ct. 285 (Marshall, J., dissenting). Instead, Lockhart requires an appellate court to step into the shoes of the trial court and to consider all of the evidence admitted before the jury whether or not erroneouslyto determine if such evidence was sufficient to support the conviction. If so, the Double Jeopardy Clause does not bar retrial. Id. at 42, 109 S.Ct. 285.
In Reese v. State, 671 So.2d 126 (Ala.Crim. App.1995), the Court of Criminal Appeals rendered a judgment for the appellant because no evidence other than a witness's *1158 prior inconsistent statement was offered to identify the appellant as the perpetrator of a crime. Without the inadmissible evidence, the court said, "the state has failed to make a prima facie case." Id. at 128. Lockhart requires, however, that all of the evidence admitted to the jury, including that evidence that later was found to be inadmissible on appeal, be considered in determining whether the evidence was sufficient to support the conviction. If it was, then the Double Jeopardy Clause did not bar retrial. Lockhart, 488 U.S. at 42, 109 S.Ct. 285. To the extent that Reese holds otherwise, it is hereby overruled.
In Lockhart, the evidence actually submitted to support the imposition of an enhanced sentence (four prior convictions), whether erroneously admitted or not, was sufficient to support the enhancement. Thus, the reversal was not equivalent to an acquittal. 488 U.S. at 40, 109 S.Ct. 285: In this present case, the trial court erroneously admitted hearsay evidenceScott's prior inconsistent statementas substantive evidence of Lindley's guilt. The total evidence offered by the State and admitted by the trial court, however, whether erroneously admitted as substantive evidence or not, was sufficient to sustain a guilty verdict.[3] Thus, the Double Jeopardy Clause does not preclude the State from retrying Lindley.
While the State cannot on retrial resubmit Scott's unauthenticated prior inconsistent statement, it should have the opportunity to submit other evidence of Lindley's guilt. In Hull v. State, 607 So.2d 369 (Ala.Crim.App. 1992), the Court of Criminal Appeals explained:
"With the following observation, the Lockhart court appears to have recognized the distinction between replacing invalid evidence with valid evidence and `rehabilitating' evidence rendered improper by the prosecution's failure to carry its burden of proof:
"`Permitting retrial in this instance is not the sort of governmental oppression at which the Double Jeopardy Clause is aimed.... Had the defendant offered evidence at the sentence hearing to prove that the conviction had become a nullity by reason of the pardon, the trial judge would presumably have allowed the prosecutor an opportunity to offer evidence of another prior conviction to support the habitual offender charge. Our holding today thus merely recreates the situation that would have been obtained if the trial court had excluded the evidence of the conviction because of the showing of a pardon.'"
Hull, 607 So.2d at 379 (quoting Lockhart, 488 U.S. at 42, 109 S.Ct. 285) (ellipsis in Hull).
In Hull, the Court of Criminal Appeals stated that although evidence held inadmissible on an initial appeal could not be resubmitted on a retrial, it would not speculate as to what additional evidence the State might, or might not, produce at a retrial.
"Although we noted that `the only evidence incriminating the [defendant was erroneously admitted],' Hull [v. State], 581 So.2d [1202], 1207 [(Ala.Crim.App.1990)], we did not render judgment in favor of the appellant. Instead, this Court reversed and remanded the cause `for further proceedings not inconsistent with' our opinion. Id. Our disposition of the first appeal was in conformance with Lockhart v. Nelson, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988)....
". . . .
"... This Court's disposition of the first appeal was based only on what was contained in the record of that appeal and was undertaken without any knowledge of or speculation about what other evidence the State might have to offer in the event of a retrial. Compare State v. Post, 109 N.M. 177, 181, 783 P.2d 487, 491 (1989) (`[w]e will not speculate as to what additional evidence or alternate theories the state could have brought forward had the trial court properly excluded the inadmissible evidence.')." *1159 Hull, 607 So.2d at 371-72 (emphasis in original). Accord Ex parte Hergott, 588 So.2d 911, 914 (Ala.1991) (stating that the Double Jeopardy Clause precludes the relitigation of the admissibility of evidence held inadmissible on appeal).[4]
On remand, the State cannot premise a second prosecution of Lindley on the same evidence that on this appeal has been held inadmissible (Scott's prior inconsistent statement), but must offer additional evidence of guilt. If the State has no additional evidence, then the trial court should enter a judgment of acquittal.

IV.
That aspect of the judgment of the Court of Criminal Appeals rendering a judgment in Lindley's favor is reversed. The remainder of the judgment is affirmed. The cause is remanded for action consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, KENNEDY, COOK, SEE, and LYONS, JJ., concur.
ALMON and SHORES, JJ., concur in part and dissent in part.
ALMON, Justice (concurring in part and dissenting in part).
The majority misapplies the Double Jeopardy Clauses of both the Alabama Constitution of 1901, art. I, § 9, and the United States Constitution, amend. V. In the context of this case, the double jeopardy prohibition prevents the state from having two bites at the same apple.
The majority states, and I agree, that the trial court should not have admitted Scott's prior inconsistent statement as substantive evidence of guilt. This was all the evidence the State presented. Thus, the State presented absolutely no admissible evidence of guilt. If "no evidence" is not insufficient evidence, then I do not know what is. Yet the majority remands for a new trial, so the State will have an opportunity to find new evidence. This decision allows the State two bites at the same apple.
None of the cases cited by the majority supports this conclusion. Even if the trial court had ruled properly on all questions of law, the quantum of evidence presented by the State would still be zero.
The Court's wording directing a remand gives the reason for applying the bar of double jeopardy:
"On remand, the State cannot premise a second prosecution of Lindley on the same evidence that on appeal had been held inadmissible (Scott's prior inconsistent statement), but must offer additional evidence of guilt. If the State has no additional evidence, then the trial court should enter a judgment of acquittal."
728 So.2d at 1159 (emphasis added). If the sum of all the evidence, including the erroneously admitted evidence, is insufficient to support the conviction, then there can be no retrial.
"The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. This is central to the objective of the prohibition against successive trials. The Clause does not allow `the State ... to make repeated attempts to convict an individual for an alleged offense,' since `[t]he constitutional prohibition against "double jeopardy" was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.'"
Burks v. United States, 437 U.S. 1, 11, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).
"Our constitution, following the parallel principle of the common law, provides, that `no person shall, for the same offense, be *1160 twice put in jeopardy of life or limb,'a safeguard of liberty which, under our Anglo-American system of jurisprudence, has always been regarded by our courts with a sanctity scarcely second to that accorded to the right of trial by jury."
Hurst v. State, 86 Ala. 604, 606, 6 So. 120, 120 (1889).
"`It is an established maxim of the common law, in the administration of criminal justice, constantly recognized by elementary writers, and courts of judicature from a very early period down to the present time, that a man shall not be brought into danger of his life or limb for one and the same offense, more than once.... The right not to be put in jeopardy a second time for the same cause is as important as the right of trial by jury, and is guarded with as much care. Accordingly there will be found in the Constitution of the United States and in the constitutions of most of the States (See Const. Ala.1901, § 9) a provision that no person shall for the same offense be twice put in jeopardy, which, however, is but a recognition of the humane rule of the common law, and a plea of former conviction (or acquittal) is good under either the constitution or the common law.' 8 R.C.L. pp. 134 and 135, §§ 114 and 115."
Eastep v. State, 25 Ala.App. 593, 594, 151 So. 616, 617-18 (1933).
The Supreme Court of the United States has stated the following regarding the application of the Double Jeopardy Clause:
"Burks[, supra,] was careful to point out that a reversal based solely on evidentiary insufficiency has fundamentally different implications, for double jeopardy purposes, than a reversal based on such ordinary `trial errors' as the `incorrect receipt or rejection of evidence.' 437 U.S., at 14-16, [98 S.Ct. 2141]. While the former is in effect a finding `that the government has failed to prove its case' against the defendant, the latter `implies nothing with respect to the guilt or innocence of the defendant,' but is simply `a determination that [he] has been convicted through a judicial process which is defective in some fundamental respect.' Id., at 15, [98 S.Ct. 2141].
"It appears to us to be beyond dispute that this is a situation described in Burks as reversal for `trial error'the trial court erred in admitting a particular piece of evidence, and without it there was insufficient evidence to support a judgment of conviction. But clearly with that evidence, there was enough to support the sentence: the court and jury had before them certified copies of four prior felony convictions, and that is sufficient to support a verdict of enhancement under the statute.... It is quite clear from our opinion in Burks that a reviewing court must consider all of the evidence admitted by the trial court in deciding whether retrial is permissible under the Double Jeopardy Clause...."
Lockhart v. Nelson, 488 U.S. 33, 40-41, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988). (Emphasis in original.)
In this case, the State cannot rehabilitate its case by correcting error on a second trial, as the prosecution could in Lockhart. In this present case, if the trial judge had ruled properly on all questions of evidence, then he should have granted a motion for acquittal based on insufficiency of the evidence. The error in this case was the acceptance, as substantive evidence, of the prior statement of the witness. That statement could be used only as impeachment evidence because the State could not lay a predicate for its admission as a past recollection recorded. That statement was the only "evidence" offered to prove Lindley's guilt. It was not admissible as evidence of guilt; it could be used only to impeach the witness's credibility. Ex parte Brown, 499 So.2d 787, 791 (Ala.1986). "[I]n particular, such [a] statement cannot be the basis of a finding of fact necessary to the establishment of civil or criminal liability or a defense to either." C. Gamble, McElroy's Alabama Evidence, § 159.02(1) (5th ed.1996). Thus, there was no substantive evidence of guilt admitted against Lindley.
*1161 I disagree with any conclusion that Lockhart modifies Burks in cases where the State's evidence is insufficient to support a conviction. In Lockhart, the defendant pleaded guilty to burglary and the jeopardy issue arose at the sentencing phase; it concerned the proof of four prior felonies used to enhance the defendant's punishment. This Court and the Court of Criminal Appeals have for some time remanded cases for the trial court to correct sentencing errors when the defendant has already been properly found guilty. Sentencing is quite different from adjudicating guilt. These could be considered as apples and oranges. Having two bites of an orange is different from having two bites of an apple. In the instant case, the State produced no legal evidence of guilt, yet the majority remands for the State to see if it can find new evidence of guilt.
I also find Zinn v. State, 527 So.2d 148 (Ala.1988), distinguishable. Zinn was convicted of driving while his license was revoked. To prove the revocation of his license, the State offered the affidavit of the supervisor of records in the Driver's License Division of the Department of Public Safety. That affidavit was admissible as proof of the offense, under Brown v. City of Montgomery, 504 So.2d 748 (Ala.Crim.App.1987). However, the Court of Criminal Appeals overruled Brown, held that the affidavit was not admissible, and rendered a judgment for Zinn. On certiorari review, this Court held that the Court of Criminal Appeals had erred in rendering a judgment for Zinn rather than allowing a retrial. That result was correct, because the evidence offered against Zinn was, under the law applicable at the time of trial, admissible to prove guilt, and it was only by an overruling of that law that the evidence was deemed inadmissible. If the State had known that it could not rely upon Brown, it could have proved Zinn's driving record in another way. Thus, Zinn presents a situation where probative evidence was admitted, but erroneously, and that error was curable so that the same evidence, or its equivalent, could be admitted without error on retrial.
Here, the State presented was no probative evidence of Lindley's guilt. The circuit court erroneously concluded that the prior inconsistent statement was substantive evidence. I would not view that conclusion as bringing this case within the principle of Lockhart or Zinn. This is not a situation where probative evidence was erroneously admitted; rather, in this case, no substantive evidence of guilt was admitted, but the case was submitted to the jury anyway. To allow a retrial in such a situation is a serious and fundamental misapplication of the principles of double jeopardy.
I would hold that the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and the Double Jeopardy Clause of Article I, § 9, of the Constitution of Alabama of 1901 bar the State from reprosecuting Lindley.
I concur to the extent the majority holds that Lindley's convictions were properly reversed. However, I dissent from the holding that Lindley can be reprosecuted.
SHORES, J., concurs.
NOTES
[*] Note from the reporter of decisions: Some of the documents filed in this case spell this defendant's name "Jeffrey Carl Lindley."
[1] The Due Process Clause provides:

"No state shall ... deprive any person of life, liberty, or property, without due process of law...."
U.S. Const. amend. XIV, § 1.
[2] The Court also explained:

"`Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction.'"
Lockhart, 488 U.S. at 38, 109 S.Ct. 285 (quoting United States v. Tateo, 377 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964)).
[3] In Burks, 437 U.S. at 14, 98 S.Ct. 2141 (see text and n. 8), the Supreme Court expressly noted that United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896), cited cases involving "trial errors," including "improper hearsay testimony received."
[4] Although the investigating officer in this case responded "no" when asked whether any person other than Scott or any physical evidence tied Lindley to the tear gas bomb, and "no" when asked whether anyone saw who threw the tear gas bomb, nowhere in the record does the State concede that it has no additional evidence. If indeed the State has no other evidence, then further prosecution will be futile.