KELLUM, Judge.
The appellant, M.L.H.,[1] was adjudicated a youthful offender based on the circuit court’s finding that he was guilty of first-degree sodomy, a violation of § 13A-6-63, Ala.Code 1975.[2] The circuit court sentenced M.L.H. to a term of 3 years’ imprisonment; however, the court split the sentence and ordered M.L.H. to serve 9 months’ imprisonment followed by 27 months’ supervised probation. The circuit court also ordered M.L.H. to submit a DNA sample, to undergo sex-offender treatment, and to pay $50 to the Crime Victims Compensation Fund and court costs.
The evidence presented at trial established the following pertinent facts. M.L.H. is the biological son of C.M. D.H. and C.M. began dating when M.L.H. was a few months old; they married when M.L.H. was approximately three years old. D.H. and C.M. had three children together: twin daughters — both of whom have the initials B.H. — and another son, J.D.H. D.H. and C.M. divorced, and D.H. married F.H. in 2002. D.H. and F.H. had two children together: L.H. and E.H. D.H. and F.H. shared custody with C.M. of M.L.H., the twin sisters, and J.D.H.; however, at the time of the incidents underlying this prosecution, M.L.H. was living with D.H. and F.H. so that he could attend Tuscaloosa County High School.
On September 22, 2007, D.H., L.H., and M.L.H. traveled to a hunting camp owned by D.H. in Marengo County, near Jefferson. At one point, F.H. telephoned D.H. to ask about the boys, and D.H. told her that M.L.H. and L.H. were riding a four-wheel all-terrain vehicle by themselves. This upset and worried F.H. because she did not want M.L.H. to be alone with L.H., who was then four years old, given her suspicion that M.L.H. had sexually molested his biological brother and sisters.
Later that evening, D.H., M.L.H., M.L.H.’s girlfriend, and another friend of *896 M.L.H.’s were watching a football game in the living room of D.H. and F.H.’s house while F.H. and L.H. were watching television in the basement. While downstairs F.H. decided she needed to talk to L.H. about inappropriate touching. She asked L.H. if anyone had ever touched his “butt” or “tee-tee.” (R. 165.) L.H. indicated that he, F.H., “his little girl friend at preschool,” and M.L.H. had touched him in those places. (R. 165.) L.H. said that M.L.H. had touched his penis while the two were in L.H.’s room. A few moments later L.H. told F.H. that M.L.H. had touched his buttocks and “[M.L.H.] stick [his] fingers up [L.H.’s] butt.” (R. 165.) F.H. took L.H. upstairs, pulled D.H. aside and told him what L.H. had just told her. During this discussion, L.H. told D.H. and F.H., “I keeped [sic] [M.L.H.’s] secret lots of times.” (R. 166.) Both F.H. and D.H. testified at trial to L.H.’s saying that he had kept M.L.H.’s secret “lots of times.” All three went back inside the house to continue watching the football game.
F.H. took L.H. to his room to read him a book and put him to bed. L.H. picked up a book, “Pooh’s Sunny Day Songs,” which had a little toy microphone on the front cover. L.H. told F.H., “[M.L.H.] do this,” and proceeded to put his mouth on the toy microphone. F.H. confirmed that L.H. was saying that M.L.H. had put his mouth on L.H.’s penis. The following Monday morning, F.H. took L.H. and E.H. to be examined by Dr. Allison Cunningham, her children’s pediatrician. That same day, D.H. and F.H. filed a police report with the Northport Poliee Department. F.H. testified that she never again discussed with L.H. the statements he made to her about M.L.H. molesting him.
At trial, L.H. testified that M.L.H. had touched L.H.’s “weiner” while the two were in the bathroom on the main floor, both with his hand and with a stick L.H. had found outside. L.H. said this happened only one time. Contrary to what L.H. had previously told F.H., L.H. denied that M.L.H. had touched his buttocks, stuck his fingers into L.H.’s anus, kissed L.H., or put his mouth on L.H.’s penis.
F.H. testified that L.H.’s behavior changed between May 2006 and September 2007. During this period, L.H. began sleeping with his lights on, wetting his bed, and crying out to F.H. during the night; all these occurrences were unusual for L.H. F.H. testified that L.H. was also kissing people on the mouth during this time and she repeatedly told him not to kiss people in that manner. L.H. had been moved from a room adjacent to F.H.’s room on the upstairs floor of the house to a room on the main floor after the birth of his sister, E.H. F.H. testified that L.H. was four years old in September 2007.
Dr. Cunningham testified that she examined L.H. on September 24, 2007. She looked at L.H.’s anus as part of her examination and observed irritation in the area. While she was examining his anus, L.H. asked Dr. Cunningham not to stick her fingers in his anus. Dr. Cunningham found this spontaneous request to be odd for a child of L.H.’s age. Based on the nature of the visit and the information given to her by F.H., Dr. Cunningham reported L.H.’s case to the Alabama Department of Human Resources (“DHR”) and referred L.H. to Dr. Michael Taylor for an examination. On cross-examination, Dr. Cunningham testified that F.H. had indicated to her that she suspected, but could not prove, that M.L.H. had been sexually abused as a child. On re-direct examination, Dr. Cunningham testified that F.H. had indicated to her that M.L.H. had a history of sexually abusing his sisters.
Sharon Whitfield, a forensic interviewer with the Tuscaloosa Children’s Center, in *897 terviewed L.H. on September 25, 2007, and recorded the interview with a video camera. The videotaped interview was played at trial. Whitfield testified that initially L.H. indicated that a friend at school with the same first name as M.L.H., had touched his penis. Later, L.H. stated that it was his brother, M.L.H., who touched his penis. L.H. indicated to Whitfield that M.L.H. had touched his penis and his rear end on a touch survey — an anatomical drawing used to identify where a victim was touched by an abuser. After conducting her interview with L.H., Whitfield referred L.H. to Terry Osberry, a professional counselor, for an extended forensic examination.
After cross-examining Whitfield, counsel for M.L.H. made an oral motion to strike that video evidence from the record. Counsel argued that the hearsay testimony contained in the video recording played at trial had not been shown to possess particularized guaranties of trustworthiness as required by § 15-25-37, Ala.Code. 1975. The circuit court denied this motion on the ground that, in its opinion, § 15-25-37 did not apply to out-of-court statements admitted at trial pursuant to § 15-25-32(1), Ala. Code 1975, under L.J.K. v. State, 942 So.2d 854 (Ala.Crim.App.2006).
Dr. Michael Taylor, a pediatrician with the Tuscaloosa branch of the University of Alabama School of Medicine, examined L.H. on November 7, 2007. L.H. indicated to Dr. Taylor that M.L.H. had touched L.H.’s penis and buttocks with his hands and that M.L.H. had put his mouth on L.H.’s penis. Dr. Taylor conducted a physical examination but found no abnormalities. L.H. became very uncomfortable when Dr. Taylor wanted to conduct an anal swab to test for venereal diseases and indicated to Dr. Taylor that “[L.H.] didn’t want [the cotton swab] near his anus.” (R. 306.) At the conclusion of his exam, Dr. Taylor recommended that L.H. undergo counseling.
Terry Osberry, a licensed professional counselor, interviewed L.H. on October 31, 2007, and again on November 14 and 26, 2007, as a part of an extended forensic examination. During the first session, L.H. told Osberry that M.L.H. had put his fingers in L.H.’s anus. L.H. also indicated that M.L.H. had touched his penis, put his tongue in L.H.’s mouth, and bit L.H.’s tongue. L.H. said this happened multiple times. During the November 14 session, Osberry presented L.H. with anatomical diagrams — Osberry referred to these as “gingerbread drawings” — so that L.H. might better describe what had happened. Using one diagram to represent M.L.H. and another to represent L.H., Osberry asked L.H. to draw lines from the part of the body M.L.H. used to touch L.H. to the part of L.H.’s body M.L.H. actually touched. L.H. drew lines from M.L.H.’s hand to L.H.’s penis, M.L.H.’s hand to L.H.’s hand, M.L.H.’s hand to L.H.’s buttocks, and M.L.H.’s mouth to L.H.’s mouth. L.H. indicated that these acts of molestation happened in his room on the main floor of the house and in the bathroom on the same floor. During the final session on November 26, L.H. told Osber-ry that M.L.H. had stuck his fingers in L.H.’s anus.
During the trial, considerable discussion took place between the State, defense counsel for M.L.H., and the court regarding the admissibility of evidence indicating that M.L.H. had touched his other brothers and sisters in an inappropriate manner. Over M.L.H.’s objection, the court allowed the State to question various witnesses about allegations that M.L.H. had molested both of the twin sisters and J.D.H. The court noted that it would consider the evidence not for the truth of the matter asserted, but rather to rebut *898 M.L.H.’s theory of defense that F.H. or D.H. had fabricated these allegations against him.
The State called both of the twin sisters and J.D.H. to testify at trial. All three testified that M.L.H. never touched them in an inappropriate manner or that they did not remember incidents in which M.L.H. touched them inappropriately. Randy Shelton, a social worker formerly with the Pickens County DHR, testified that in 2003, he investigated allegations that M.L.H. had molested his siblings. According to Shelton, M.L.H. admitted to touching one sister on the buttocks, but denied touching his brother. The sister M.L.H. said he touched on the buttocks confirmed that incident to Shelton. The other sister also told Shelton that M.L.H. had touched her buttocks. J.D.H. told Shelton that on one occasion, M.L.H. asked him to place his mouth on M.L.H.’s penis and he complied. Afterwards, M.L.H. placed his mouth on J.D.H.’s penis.
D.H., F.H.’s husband and M.L.H.’s biological father, testified that in 2002, he walked into a bedroom and M.L.H. and one of M.L.H.’s twin sisters were in bed together; the other twin and J.D.H. were in a half-bathroom adjacent to the bedroom. B.H. ran out of the room and D.H. pulled M.L.H. out of the bed. D.H. testified that M.L.H. was wearing underwear, but had an erection at the time. D.H. telephoned M.L.H.’s mother and had her come pick M.L.H. up. After M.L.H. left, D.H. talked to the two sisters. One sister said that M.L.H. had touched her “under her panties.” (R. 514.) When asked why she was in the bathroom when D.H. walked into the bedroom, the other sister said, “I didn’t want it to happen to me anymore.” (R. 514.) D.H. also explained that when J.D.H. was five or six years old, J.D.H. told D.H. that M.L.H. had put his mouth on J.D.H.’s penis and that M.L.H. made J.D.H. put his mouth on M.L.H.’s penis. D.H. also testified that he decided to press charges in 2007 after F.H. told him what L.H. had said M.L.H. had done to him.
After considering the evidence presented by both the State and M.L.H., the circuit court determined M.L.H. to be a youthful offender based on its finding that M.L.H. was guilty of first-degree sodomy. This appeal ensued.
I.
On appeal, M.L.H. argues that the circuit court erred in considering hearsay statements admitted pursuant to the Child Sexual Abuse Victim Protection Act, § 15-25-30 et seq., Ala.Code 1975 (“the Act”), as substantive evidence of guilt. Specifically, M.L.H. contends that because L.H.’s prior statements admitted pursuant to the Act were inconsistent with L.H.’s trial testimony, the hearsay statements could be considered substantive evidence of guilt only if the statements satisfied the requirement of Rule 801(d)(1)(A), Ala. R. Evid. Because L.H.’s prior statements did not satisfy the requirements of Rule 801(d)(1)(A), M.L.H. argues, the statements could not have been considered substantive evidence of guilt.
At the close of the State’s case, M.L.H. moved for a judgment of acquittal to the charges of first-degree sodomy and first-degree sexual abuse. The circuit court denied this motion. M.L.H. renewed his motion for a judgment of acquittal at the close of his case. The circuit court once again denied this motion; however, the circuit court asked both M.L.H. and the State to submit a brief on the issue discussing for what purpose the court could consider L.H.’s statement. The court explained:
“THE COURT: Just with [L.H.’s] hearsay statements — which I believe under *899 the statute to be admissible; that’s why I’ve let them in — are those statements to be used as substantive evidence of the facts that they attempt to prove? Is it limited to something lesser than that, such as credibility or something of that nature?
“I’ve not seen a case on that issue, but I’m going to look. And I would ask for /all to look to let me know — and I guess this is the bottom line question: For what purpose do I consider [L.H.’s] out-of-court statements in this case?”
(R. 802-3.)
M.L.H. submitted a brief in which he argued that the hearsay testimony provided by the various witnesses could not be considered substantive evidence of the facts the statements attempt to prove because the hearsay statements were inconsistent with L.H.’s trial testimony. M.L.H. argued that the statements could be considered only for impeachment purposes. The circuit court ultimately found M.L.H. guilty of the first-degree-sodomy charge.
On appeal, M.L.H. argues that even if L.H.’s hearsay statements were admissible pursuant to the Act, the statements also had to satisfy the requirements of Rule 801(d)(1)(A), Ala. R. Evid., in order to be considered substantive evidence of guilt. According to M.L.H., the hearsay statements did not meet the requirements of Rule 801(d)(1)(A) and thus could be considered only for impeachment, and not substantive, purposes. The State argues that because L.H.’s hearsay statements fell within the purview of the Act pursuant to § 15-25-31, and because L.H. testified at trial — thus satisfying the requirements of § 15-25-32(1) — the circuit court could consider the hearsay statements as substantive evidence of guilt. The State also contends that the legislature intended for statements admitted pursuant to the Act to be considered substantive evidence and that intent controls.
Neither this Court nor the Alabama Supreme Court has addressed a claim involving the interplay of the Act and Rule 801, Ala. R. Evid., in the context of a child who testifies at trial in a manner inconsistent with the child’s prior statements. In order to resolve whether the circuit court properly considered as substantive evidence L.H.’s hearsay statements, we must determine whether under the Act, the circuit court could consider L.H.’s hearsay statements as substantive evidence of M.L.H.’s guilt. If we conclude that it could, we must next determine whether the circuit court could consider L.H.’s hearsay statements as substantive evidence of M.L.H.’s guilt under Rule 801(d)(1)(A). If we conclude that under Rule 801(d)(1)(A) the court could not, then a conflict exists between the statute and Rule 801(d)(1)(A). We must then determine whether the statute or Rule 801(d)(1)(A) controls the permissible use of the hearsay statements.
A. The substantive use of hearsay statements admitted under the Act.
Section 15-25-31 provides:
“An out-of-court statement made by a child under 12 years of age at the time of the proceeding concerning an act that is a material element of any crime involving child physical offense, sexual offense, and exploitation, as defined in Section 15-25-39, which statement is not otherwise admissible in evidence, is admissible in evidence in criminal proceedings, if the requirements of Section 15-25-32 are met.”
Section 15-25-39 provides:
“For purposes of this article, a ‘child physical offense, sexual offense, and exploitation’ is defined to include the fol *900 lowing crimes, when one or more of the victims is a child under the age of 12:
[[Image here]]
“(2) Sodomy in any degree.
“(3) Sexual abuse in any degree.”
Section 15-25-32(1) states:
“An out-of-court statement may be admitted as provided in Section 15-25-31, if: (1) The child testifies at the proceeding, or testifies by means of video tape deposition as provided by Section 15-25-2, or testifies by means of closed circuit television as is provided in Section 15-25-3, and at the time of such testimony is subject to cross-examination about the out-of-court statements.”
This Court has frequently recognized the substantive use of evidence admitted pursuant to the Act. See, e.g., Edwards v. State, 612 So.2d 1282 (Ala.Crim.App.1992) (hearsay statements made by a seven-year-old rape victim to her mother, a physician, and a social worker); King v. State, 929 So.2d 1032 (Ala.Crim.App.2005) (hearsay statements made by child sexual-abuse victim to two child-advocacy counselors).
Here, M.L.H. faced charges of first-degree sodomy and first-degree sexual abuse, two charges contemplated by § 15-25-39(2) and (3), Ala.Code 1975. The statements L.H. made to his mother, to Dr. Taylor, to Sharon Whitfield, and to Terry Osberry, which were repeated by the respective witnesses at trial, regarding M.L.H.’s inappropriate touching and acts of sexual molestation contemplated material elements of first-degree sodomy and first-degree sexual abuse as required by § 15-25-31. Finally, L.H. testified at trial, satisfying the final requirement for admissibility under § 15-25-32(1).
Accordingly, because the State met the various requirements of the Act, L.H.’s hearsay statements, under the Act, could be considered substantive evidence by the circuit court.
B. The substantive use of hearsay statements under Rule 801(d)(1)(A), Ala.

R. Evid.

Rule 801, Ala. R. Evid., governs the admissibility of prior inconsistent statements of witnesses and provides, in pertinent part:
“(d) Statements That Are Not Hearsay. A statement is not hearsay if:
“(1) Prior Statement by Witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... inconsistent with the declarant’s testimony, and was given under oath subject to penalty of perjury at a trial, hearing, or other proceeding, or in a deposition.... ”
The Advisory Committee’s Notes to Rule 801 state:
“Subdivision (d)(1)(A). Inconsistent Statement. If a witness testifies, and is subject to cross-examination, then that witness’s prior inconsistent statement is exempted from the hearsay definition, but only if it was made under oath, subject to the penalty of perjury, and made at a trial, hearing, or other proceeding, or in a deposition. This rule is consistent with preexisting Alabama practice. See Hooper v. State, 585 So.2d 137 (Ala.1990); Randolph v. State, 348 So.2d 858 (Ala.Crim.App.), cert. denied, 348 So.2d 867 (1977). See also C. Gamble & F. James III, Perspectives on the Evidence Law of Alabama: A Decade of Evolution, 1977-1987, 40 Ala. L.Rev. 95, 116 (1988). Compare Ala. R. Civ. P. 32(a)(1) (containing a broad rule with regard to the admissibility of prior inconsistent statements found in a party/witness’s deposition). Inconsistent statements generally, offered to impeach a witness, will continue to be admissible *901 upon the theory that such statements are not offered to prove the truth of the matter asserted but, rather, to show that the witness says one thing in court today but said something different in the past. Ala. R. Evid. 801(c); Redus v. State, 248 Ala. 820, 9 So.2d 914 (1942), cert. denied, 318 U.S. 774 (1943). See C. Gamble, McElroy’s Alabama Evidence § 159.02(1) (4th ed.1991); C. Gamble, C. Howard, & J. McElroy, The Turncoat or Chameleonic Witness: Use of His Prior Inconsistent Statement, 34 Ala. L.Rev. 1 (1983). Common law would not admit such statements as substantive evidence of the truth of the assertion unless the inconsistent statement was made by a party opponent. See Bailey v. State, 41 Ala.App. 39, 123 So.2d 304 (1960). In contrast, Rule 801(d)(1)(A) will work to admit all inconsistent statements, meeting its requirements, as substantive evidence of the truth of the matter asserted in them.”
Additionally, Professor Gamble has made the following observations regarding the use as substantive evidence of a non-party’s self-contradiction:
“A self-contradictory statement by a witness who is not a party, whether testified to by the witness during questioning or proven extrinsically by others, generally is not substantive evidence of the matter asserted. The statement customarily operates only to impeach or discredit the witness and has no other effect; in particular, such statement cannot be the basis of a finding of fact necessary to the establishment of civil or criminal liability or a defense to either.
[[Image here]]
“At least some inconsistent statements, however, constitute substantive evidence as to the truth of the matter asserted in them. When a witness, for example, testifies at a trial or hearing and is subjected to cross-examination then that witness’ prior inconsistent statement is admissible as substantive evidence if it was given under oath subject to penalty of perjury at trial, hearing, or other proceeding or in a deposition. A statement qualifies under the present rule only if: (1) it is inconsistent with the witness’s present testimony; (2) the witness is subject to cross-examination; and (3) the statement was given in an appropriate proceeding. Appropriate proceedings include such proceedings as hearings before a grand jury, prior trials, and depositions. When a prior inconsistent statement is offered for substantive proof of its contents under the present principle, the offering party is due an instruction that it is usable both as going to the credibility of the witness and as substantive proof of the matter asserted.”
C. Gamble, McElroy’s Alabama Evidence, § 159.02(1) (6th ed.2009). Accordingly, under Rule 801(d)(1)(A), a prior statement of a witness may be considered substantive evidence of the facts asserted within the statement if (1) the statement is inconsistent with the witness’s testimony at trial; (2) the witness is subject to cross-examination regarding the prior inconsistent statements; and (3) the prior inconsistent statement was given under oath subject to penalty of perjury at trial or in a hearing, other proceeding, or deposition.
First, it is apparent that L.H.’s prior statements were inconsistent with his testimony at trial. At trial, L.H. testified that M.L.H. touched his penis with M.L.H.’s hand and a piece of wood L.H. found outside his house. L.H. testified that M.L.H. never touched his buttocks, stuck his fingers into L.H.’s anus, kissed L.H., or put his mouth on L.H.’s penis. The denials within L.H.’s testimony direct *902 ly contradicted various claims made in his statements to his mother, to Dr. Taylor, to Sharon Whitfield, and to Terry Osberry. Thus, the first criterion of Rule 801(d)(1)(A) was satisfied. Likewise, the second criterion was satisfied because L.H. testified at trial and was subject to cross-examination. However, we note that none of L.H.’s prior statements were given under oath subject to penalty of perjury at a trial or in a hearing, other proceeding, or deposition. Thus, the hearsay statements did not meet the final requirement of Rule 801(d)(1)(A).
L.H.’s hearsay statements do not meet the requirements of Rule 801(d)(1)(A). Therefore, L.H.’s statements to his mother, Dr. Taylor, Sharon Whitfield, or Terry Osberry cannot be considered substantive evidence of the facts asserted therein, but rather can be considered only as impeachment evidence. Accordingly, because the statements failed to meet the various requirements of Rule 801(d)(1)(A), L.H.’s hearsay statements, under Rule 801(d)(1)(A), could not be considered substantive evidence by the circuit court.
Based on the foregoing it is apparent that there is an inherent tension between the Act and Rule 801(d)(1)(A); evidence available for substantive use under the former is available only for impeachment or nonsubstantive use under the latter. Accordingly, the relevant question here is whether the Act or Rule 801(d)(1)(A) controls the manner in which the circuit court could consider L.H.’s hearsay statements.
C. Schoenvogel, Rule 601, Ala. R. Evid., and the “Dead Man’s Statute”.
The Alabama Supreme Court has addressed a situation similar to the one at hand in which a rule of evidence allowed for the admission of certain statements whereas a statute governing the same would not. In Schoenvogel v. Venator Group Retail, Inc., 895 So.2d 225 (Ala.2004), the plaintiff, a former employee of a Lady Foot Locker sports apparel store, filed an action in the United States District Court for the Northern District of Alabama alleging various claims against Venator Group Retail, Inc., d/b/a Lady Foot Locker, and the estate of Anthony DaSil-va, Schoenvogel’s former supervisor at the Lady Foot Locker store where she was employed. At the heart of Schoenvogel’s claims was the allegation that DaSilva sexually assaulted Schoenvogel on August 2, 2000, at the Lady Foot Locker store where the two worked. DaSilva committed suicide shortly after the alleged assault. The defendants filed a motion for a summary judgment claiming, in part, that the Dead Man’s Statute, § 12-21-163, Ala.Code 1975, prohibited Schoenvogel from testifying to the events surrounding the alleged assault.[3] Schoenvogel argued that Rule 601, Ala. R. Evid., superseded the Dead *903 Man’s Statute and that her testimony would be admissible under Rule 601.[4] Pursuant to Rule 18, Ala. R.App. P., the Alabama Supreme Court certified the following question from the federal district court: “Has the Alabama Dead Man’s Statute, § 12-21-163, Ala.Code 1975, been superseded by Rule 601, Ala. R. Evid.?”
In concluding that Rule 601, Ala. R. Evid., had superseded the Dead Man’s Statute, the Supreme Court first observed that in adopting Rule 601, the Supreme Court intended to abrogate the Dead Man’s Statute. See Schoenvogel, 895 So.2d at 230 (“Against this backdrop of lengthy and painstaking vetting of the rule by this Court, it cannot be gainsaid that this Court intended for the adoption of Rule 601 to abrogate the Dead Man’s Statute.”) The Court then discussed at length the Supreme Court’s rule-making authority under the “new” judicial article, that power vis-á-vis the legislature’s rule-making authority, and how the interplay of the two would resolve the question at hand:
“ ‘On December 18, 1973, the people of this state overwhelmingly approved a fundamental reorganization of the state’s judicial system. By a vote of almost two-to-one, the people approved a constitutional amendment (new judicial article) which was proclaimed on December 27, 1973 as Amendment No. 328 to the Alabama Constitution, 1901, and which laid to rest a system that served well in the 18th and 19th centuries, but which was strained by the economic, political and social conditions of the 20th century. On the old foundations, a modern judicial system has been erected, designed to meet the needs of the people of this state in the last quarter of this century, and to continue to be responsive to the kaleidoscopic challenges of modern-day life on into the 21st century.
“ ‘The citizens of this state now demand a modern, responsive, effective judicial system which does not cling to the ideas and concepts of a more pristine period when problems of judicial administration were slight. For in today’s complex society, just as procedure is the handmaid of justice, so too, judicial administration is the handmaid of an effective judicial system. The independence of the judiciary to do those things judicial cannot realistically be separated from the need for administrative independence if the mandate of the people for a more effective system of justice is to be fulfilled.
“ ‘One can not escape some of the underlying themes of the new constitutional framework for courts when a comparison is made between the provisions of the old judicial article and the new judicial article. One of the underlying themes is a constitutional mandate that the judicial branch exercise more administrative independence.
“ ‘Another underlying theme is that the Supreme Court should make the initial determination of the operating rules for the judicial system, subject only to specific restraints, in order to ensure a more effective businesslike operation of the entire court system. While many legal and judicial scholars in Alabama felt that “rule-making power” previously existed in the inherent powers of the equal but separate judicial branch of government, *904 the highest court in this state had evidenced considerable restraint in the past pertaining to the exercise of such powers. In order that the judiciary, as well as the other branches of government, understand that “rule-making power” was clearly vested within the Supreme Court, the judicial article mandated that the highest court of Alabama make and promulgate the rules of administration for all courts, as well as the rules governing practice and procedure. Regardless of whether this is construed as a constitutional transfer of authority or a clearer restatement of inherent powers, there can be no doubt that the new judicial article places the mandatory function on the Supreme Court to make the operating rules for the judicial system, subject to only specific restraints and checks. See Section 6.11 of Amendment 828.’
“Morgan County Comm’n v. Powell, 292 Ala. 800, 325-26, 293 So.2d 830, 853-54 (1974) (Heflin, C.J., dissenting).
“Section 6.11 of Amendment No. 328 [now § 150, Ala. Const. 1901 (Off.Re-comp.) ] to the Alabama Constitution of 1901 reads:
“ ‘The supreme court shall make and promulgate rules governing the administration of all courts and rules governing practice and procedure in all courts; provided, however, that such rules shall not abridge, enlarge or modify the substantive right of any party nor affect the jurisdiction of circuit and district courts or venue of actions therein; and provided, further, that the right of trial by jury as at common law and declared by section 11 of the Constitution of Alabama 1901 shall be preserved to the parties inviolate. These rules may be changed by a general act of statewide application.’
“Section 6.21(h) of Amendment No. 328 provides:
‘“Except to the extent inconsistent with the provisions of this article, all provisions of law and rules of court in force on the effective date of this article shall continue in effect until superseded in the manner authorized by the Constitution.’
“The ‘old judicial article’ comprised Art. VI, §§ 139-172, Constitution of Alabama 1901. The ‘new judicial article’ repealed the old judicial article and replaced it with an entirely new Article VI. There was no counterpart to § 6.11 in the old judicial article, but rather Art. VI, § 140, was deemed to imply an inherent power in the Supreme Court of Alabama to make rules governing practice and procedure in the courts. Section 140 provided that ‘the supreme court shall have the power to issue writs of injunction, habeas corpus, quo war-ranto, and such other remedial and original writs as may be necessary to give it a general superintendence and control of inferior jurisdictions.’ Article VI, § 139, of the old judicial article, like Art. VI, § 6.01, of the new judicial article, vested the judicial power of the State in the Supreme Court and other specified courts (except, under § 139, the judicial power of the Senate sitting as a court of impeachment, and under § 6.01, ‘[e]x-cept as otherwise provided by this Constitution’).
“Analyzing the rulemaking powers established by those constitutional provisions, this Court declared as follows in Ex parte Foshee, 246 Ala. 604, 606-07, 21 So.2d 827, 828-29 (1945):
“ ‘It has been the recognized doctrine in this State that a legislative enactment takes precedence over a rule of the Court. Nichols v. Dill, 222 *905 Ala. 455, 132 So. 900 [(1931)]; Williams v. Knight, 233 Ala. [42], 169 So. 871 [ (1936) ]; Porter v. State, 234 Ala. 11, 174 So. 311 [ (1937) ]; 21 Corpus Juris Secundum, Courts, § 176, p. 276 et seq.; 14 Amer. Jur. 347; 21 Corpus Juris Secundum, Courts, § 179, subsec. b, p. 288.
“ ‘But there have been efforts to hamper the orderly functioning of this Court, which have been repudiated. Hackett v. Cash, 196 Ala. 403, 72 So. 52 [ (1916) ]; Halle v. Brooks, 209 Ala. 486, 96 So. 341 [ (1923) ]; Thornhill v. Gulf Coast Produce Exch., 219 Ala. 251, 121 So. 912 [ (1929) ]; Buttrey v. Buttrey, 218 Ala. 268, 118 So. 282 [(1928)].
“‘To make a rule for an inferior court this Court must have authority conferred either by the Constitution or by statute. 21 Corpus Juris Secun-dum, Courts, § 170, p. 264; State v. Roy, 40 N.M. 397, 60 P.2d 646, 110 A.L.R. 1 [ (1936) ].
“ ‘Our Constitution, section 140, gives this Court superintendence and control of inferior jurisdictions, and that includes by implication the power to make rules, and it is therefore sometimes said to be an inherent power. 21 Corpus Juris Secundum, Courts, § 170, p. 264; State v. Roy, 40 N.M. 397, 60 P.2d 646, 110 A.L.R. 1 [(1936)].
“‘But the Constitution confers on the legislature plenary power to legislate except as restricted by the Constitution, State or federal. Section 44, Const.; Sisk v. Cargile, 138 Ala. 164, 172, 35 So. 114 [(1903)]. This includes the power to prescribe rules of practice and procedure in the courts of the State. Porter v. State, 234 Ala. 11, 174 So. 311 [(1937)]. See, Sibbach v. Wilson & Co., 312 U.S. 1, 655, 61 S.Ct. 422, 85 L.Ed. 479 [ (1941) ]; Wayman v. Southard, [23 U.S.] 10 Wheat. 1, 42, 6 L.Ed. 253 [(1825)]. The power of this Court flowing from the provisions of section 140 of the Constitution by inference and the power conferred on the legislature to prescribe rules of practice and procedure must be coordinated.
“ ‘The power which this Court has to make rules and regulations for inferior courts is to do a judicial act. The legislative power to make the rules and regulations for all the courts is legislative. There are certain proceedings which are so vital to the efficient functioning of a court as to be beyond the legislative power. This Court may by section 140, supra, make rules and regulations which cover that field and also those which extend beyond it. The legislature has the same power in the latter field. But that of the legislature in it being by express constitutional grant is superior to that of this Court inferred merely from section 140, supra. The legislature may preempt that field or omit to act in it, so as to permit the court to have full sway temporarily in it. Or it may by legislative enactment give clear expression to the constitutional implication in the form of a delegation to this Court of the power to make rules of practice for inferior tribunals. In either event, the action by this Court is judicial in nature, but becomes the law pro tanto and remains so until it is amended or repealed.
“ ‘But the failure of the legislature to act or its express authority to do so given to this Court is operative only until the legislature undertakes again to enter the field by making rules and regulations through legislative channels. It cannot permanently diminish *906 or abrogate its constitutional power to be thereafter exercised to make laws, including those pertaining to practice and procedure. It cannot curtail future constitutionally authorized legislation.
“ ‘Since the legislature can make rules of practice and procedure, it can amend any rules made by it, or by this Court, for an inferior court, unless by doing so it prohibits the due and orderly processes by which that court functions, or prevents it from properly functioning. 21 Corpus Juris Secun-dum, Courts, p. 288, § 179, subsec. b. The legislature may therefore amend the law as expressed in Equity Rule 56, unless by so doing it would hamper the proper functioning of the trial court. Our judgment is that the Act of May 21, 1943, supra, would not have that effect.
“ ‘In amending that law, it is immaterial that it purports to amend a rule of this Court. The substance and effect is that it amends the law as thus expressed and refers to the rule for clarity. This is not objectionable, when as enacted it is complete, clear and precise within itself. Harris v. State ex rel. Williams, 228 Ala. 100, 151 So. 858 [ (1983) ].’
“This Court affirmed on a number of subsequent occasions its inherent authority to promulgate rules of practice and procedure for the lower courts over which the Alabama Constitution gave it ‘superintendence and control.’ Pankey v. City of Mobile, 250 Ala. 566, 35 So.2d 497 (1948); Louisville & Nashville R.R. v. Johns, 267 Ala. 261, 101 So.2d 265 (1958); Ex parte Huguley Water Sys., 282 Ala. 633, 213 So.2d 799 (1968); and Morgan County Comm’n v. Powell, supra.
“Because § 6.11 explicitly confers on this Court rulemaking authority, and, in fact, mandates that this Court exercise that authority, some of the rationale of Ex parte Foshee, supra, is undercut. The Court in Foshee placed great emphasis on the fact that its rulemaking power was derived only ‘by implication’ from the Constitution as it then stood, ‘flowing from [it] by inference,’ 246 Ala. at 606, 21 So.2d at 829, as contrasted with the ‘plenary power’ conferred on the Legislature. Thus, in assessing the relative rulemaking powers of the Legislature and this Court under the language of § 6.11, it must be remembered that ‘[p]re-1973 cases dealing with the Legislature’s authority merely provide historical background.’ Ex parte Stewart, 730 So.2d 1246, 1250 n. 1 (Ala.1999).
“Nonetheless, it has long been recognized that the Legislature, operating within its separate sphere of constitutional authority, also has the power to establish rules governing practice and procedure in the courts in this State.
“ ‘ “We do not, by this opinion, intend in any way to limit the inherent right of courts of general jurisdiction to make such rules as are necessary in the dispatch of business in said courts, but it is within the power of the Legislature, subject to such provisions as may be incorporated in the Constitution, to establish rules of procedure by which courts shall exercise jurisdiction and conduct the trial of cases, and where a positive rule of practice is established by statute, the courts have no discretion in the matter. 15 Juris Corpus 901(275).” ’
“Porter v. State, 234 Ala. 11, 13, 174 So. 311, 312 (1937).
“ ‘We have never denied the right and power of the legislature to enact laws regulating any proceedings in *907 this Court, even though they relate to matters in which the court is exercising its inherent power, so long as such legislation does not impair unduly an exercise of such powers.’
“Ex parte Dozier, 262 Ala. 197, 199, 77 So.2d 903, 905 (1953).
“ ‘ “While we recognize in general the right and power of the legislature to prescribe rules of pleading and practice and of evidence, we have also referred to the fact that the court is of constitutional origin, the same as the legislature, and has powers of common law descent which are implied by the terms used in the Constitution. This means that the judicial power is coordinate with the legislature, and neither can encroach upon the other. We have applied that principle to hold that the legislature cannot validly pass a law which will impede the functioning of the court. Ex parte Foshee, 246 Ala. 604, 606(1), 21 So.2d 827 [ (1945) ]; Southern Ry. Co. v. Hanby, 166 Ala. 641, 52 So. 334 [(1910)] [overruled in part on other grounds, Louisville & Nashville R.R. v. Abernathy, 197 Ala. 512, 73 So. 103 (1916) ]. So that if the legislature enacts a law which is repugnant to the ordinary power and proper functioning of the court, we very reluctantly point that out in declining to abide by it.” ’
“Louisville & Nashville R.R. v. Johns, 267 Ala. at 276-77, 101 So.2d at 279-80 (quoting from an opinion on original deliverance in Birmingham Transit Co. v. Persons, 266 Ala. 406, 96 So.2d 673 (1957), that was withdrawn on application for rehearing).
“The Legislature exceeds its power in the area of rulemaking if its action ‘prohibits the due and orderly processes by which [a] court functions, or prevents it from properly functioning,’ Ex parte Foshee, 246 Ala. at 607, 21 So.2d at 829, or disturbs the functions and orderly processes of the court, Broadway v. State, 257 Ala. 414, 418, 60 So.2d 701, 704 (1952). ‘[T]he functions and orderly processes of courts which derive their existence from the state constitution may not be disturbed by any legislative enactment.’ Ex parte Huguley Water Sys., 282 Ala. at 639, 213 So.2d at 805. A legislative enactment may not encroach on the core judicial power. Ex parte Jenkins, 723 So.2d 649, 653-56 (Ala.1998). The mandate to this Court in § 6.11 to make and promulgate rules governing the administration of all courts and rules governing practice and procedure in all courts is an empowerment by and from the people; it does not depend on legislative enactment for its existence or implementation.
“Nonetheless, because that was not true for all features of the new judicial article, and because coordinated confirmatory legislation was helpful for the purpose of furthering the declaration of § 6.01 of the new judicial article that ‘the judicial power of the state shall be vested exclusively in a unified judicial system,’ the Legislature enacted Act No. 1205 in 1975, the title of which states that it is an act ‘[t]o implement the new Judicial Article of the Alabama Constitution (Amendment No. 328, approved December 18, 1973); by establishing a unified judicial system for the state ...’ (‘the Judicial Article Implementation Act’). Among the sections of that act pertinent to the present discussion were the following provisions, as subsequently codified:
“ ‘(a) Since the Supreme Court now has the initial primary duty to make and promulgate rules governing practice and procedure in all courts, as well as rules of administration for all *908 courts, all such rules made and promulgated by the Supreme Court shall be filed in the office of the Clerk of the Supreme Court and published in the official report of decisions. The Clerk of the Supreme Court shall certify to the Secretary of State all such rules. The Secretary of State shall cause such rules to be published in the Acts of Alabama and in any code of the laws of Alabama whenever such codes are published or in pocket supplements to codes.
[[Image here]]
“ ‘(c) Rules heretofore promulgated by the Supreme Court shall not be considered to have been superseded or modified by this title unless by express reference in this title or by law hereinafter enacted or by irreconcilable conflict with this title.’
“Ala.Code 1975, § 12-2-19(a) and (c).
“In 1977, as a part of its adoption of the Code of Alabama 1975, the Legislature included § 12-1-1, which reads as follows:
“ ‘Any provisions of this title regulating procedure shall apply only if the procedure is not governed by the Alabama Rules of Civil Procedure, the Alabama Rules of Appellate Procedure or any other rule of practice and procedure as may be adopted by the Supreme Court of Alabama.’
“That Code section, along with the rest of the Code of Alabama 1975, became effective on October 31, 1977. Ex parte Stewart, 780 So.2d at 1249. As explained in Ex parte Stewart, however:
“‘[Section] 12-1-1 is also phrased so as to allow a prospective field of operation in that it refers not only to rules existing when the 1975 Code was adopted, but also to “any other rule of practice and procedure as may be adopted by the Supreme Court of Alabama.” Prospective application of § 12-1-1, to the extent that it would never allow a statute enacted after that section’s effective date to override a rule of court, would forfeit the authority conferred by the people on the Legislature in § 6.11. Such an application would, therefore, unconstitutionally defeat the mandate of § 6.11 that the Legislature, and not the Court, has the last word on matters of procedure so long as the change is wrought by a general act of statewide application.’
“(Emphasis added.)
“Thus, pursuant to the express legislative declaration in § 12-1-1, when this Court adopted the Alabama Rules of Evidence effective January 1, 1996, those rules supplanted and superseded any provisions of Title 12 of the Code of Alabama 1975 inconsistent with those rules, subject, however, to the limitation declared in Ex parte Stewart that the prospective application of § 12-1-1 would not preclude the Legislature from subsequently overriding one of those rules under the authority conferred on it in § 6.11 to do so by a general act of statewide application.”
895 So.2d at 230-35. Ultimately, the Supreme Court concluded that pursuant to § 6.11 of Amendment No. 328 — now codified as Art. VI, § 150, Ala. Const. (OffiRecomp.) — and § 12-1-1, Ala.Code 1975, the Alabama Supreme Court, in adopting Rule 601, Ala. R. Evid., abrogated the Dead Man’s Statute.
Included in Title 15 of the Code of Alabama 1975 is § 15-1-1, a statute that mirrors § 12-1-1. Section 15-1-1 provides: “Any provisions of this title regulating procedure shall apply only if the procedural subject matter is not governed by the rule of practice and procedure adopted by the Supreme Court of Alabama.” Based on *909 the Supreme Court’s rationale in Schoen-vogel, we hold that the Alabama Rules of Evidence supplanted and superseded any provisions of Title 15 of the Code of Alabama 1975 inconsistent with those rules. However, as the Supreme Court did in Schoenvogel, we likewise recognize the limitation declared in Ex parte Stewart regarding the prospective application of § 12-1-1 — namely, that it would not preclude the legislature from subsequently overriding one of those rules under the authority conferred on it in § 6.11 to do so by a general act of statewide application— and now hold that pursuant to Schoenvogel and Ex parte Stewart, the prospective application of § 15-1-1 will not preclude the legislature from subsequently overriding one of those rules under the authority conferred on it in § 6.11 to do so by a general act of statewide application.
Under Schoenvogel, it is apparent that if a statute and a rule of evidence conflict on a matter of procedure, the most recently enacted of the two will control. The Child Sexual Abuse Victim Protection Act became effective on May 17,1989. See Fortner v. State, 582 So.2d 581 (Ala.Crim.App.1990) (“The Child Sexual Abuse Victim Protection Act of 1989 (codified at Ala. Code §§ 15-25-80 through 15-25-40 (Supp.1990)) became effective on May 17, 1989. Act No. 89-876 (1989 Ala. Acts).”). Sections 15-25-30, -31, and -39 were amended by the legislature effective May 4, 1994. Act No. 94-704 (Ala. Acts 1994). The Alabama Supreme Court adopted the Alabama Rule of Evidence effective January 1, 1996. Accordingly, because it became effective after the effective date of the Act, Rule 801 governs the admissibility of L.H.’s hearsay statements.
Finally, before concluding that the Supreme Court had properly abrogated the Dead Man’s Statute pursuant to Rule 601, the Court had to determine whether the Court, in adopting Rule 601 and abrogating the Dead Man’s Statute, improperly abridged, enlarged, or modified the substantive rights of any party in contravention of the limitation in § 6.11 that the Supreme Court’s rules “not abridge, enlarge, or modify the substantive rights of any party.” After surveying the history and practice of the Dead Man’s Statute in Alabama as well as other jurisdictions, and after surveying the various tests used to distinguish practice and procedure from substantive rights, the Court concluded:
“Under any of the various tests and approaches to discriminating between substance and procedure, we would conclude that abrogation of the Dead Man’s Statute by Rule 601 represents a permissible exercise of this Court’s constitutional rulemaking authority; the statute governs practice and procedure and does not abridge, enlarge, or modify the substantive right of any party. Certainly it does not affect the prelitigation conduct of a party. Also, as previously discussed, its predominant and paramount purpose is to aid the fact-finder’s truth-seeking function by avoiding a particularly tempting potential for perjury. Its unique ‘representative or fiduciary relation’ provision reflects that aim. Thus, truth seeking, not the protection of estates, is the primary purpose of the Dead Man’s Statute; it only incidentally affects bogus claims against estates. Historically, witness competency was governed initially only by court-fashioned rules, and has only evolved into a shared area of rulemaking between this Court and the Legislature.”
We believe that the Act is likewise procedural in nature and that it does not abridge, enlarge, or modify the substantive right of any party. The truth-seeking function inherent within the Act is apparent: statements made by a violated and *910 vulnerable child victim to his or her parent, doctor, or social worker — like L.H.’s statements to his mother, pediatrician, and various social workers — would be available at trial to provide the fact-finder with relevant factual descriptions of events likely given more contemporaneously with the occurrences of the events than the child witness’s testimony at the time of trial. Moreover, we cannot in good conscience say that the Act changes the pre-litigation conduct of any party involved. It is apparent beyond all contradiction that F.H. would have sought the care she did for L.H. regardless of the existence of the Act.
Based on the foregoing, in the present factual situation under which the Act and Rule 801(d)(1)(A) command different results regarding the permissible use of L.H.’s hearsay statements, pursuant to the Alabama Supreme Court’s holding in Scho-envogel, Rule 801(d)(1)(A), Ala. R. Evid., must govern the permissible considerations of L.H.’s hearsay statement. Because the hearsay statements do not satisfy the various requirements of Rule 801(d)(1)(A), the statements may not be used for substantive purposes but for impeachment purposes only. Accordingly, to the extent the circuit court considered L.H.’s hearsay statements as substantive evidence of M.L.H.’s guilt, the circuit court erred to reversal.
II.
M.L.H. next argues that because the circuit court erred in considering L.H.’s statements as substantive evidence of his guilt, the court erroneously denied his motion for a judgment of acquittal. Specifically, M.L.H. argues that without L.H.’s hearsay statements, the State presented insufficient evidence to support his conviction for first-degree sodomy. Additionally, within this argument, M.L.H. argues that double-jeopardy principles bar the State from retrying him on the first-degree-sodomy charge.
In Lindley v. State, 728 So.2d 1153 (Ala.1998), the Alabama Supreme Court addressed a similar question and, relying on Lockhart v. Nelson, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988), held that when an appellate court reverses a conviction for any reason other than the failure of the State to present a prima facie case, the Double Jeopardy Clause did not bar retrial where the evidence presented at trial — erroneously or properly admitted— would have been sufficient to sustain a guilty verdict. The Court explained:
“In Lockhart, the Supreme Court rejected a hindsight approach under which an appellate court could retroactively exclude evidence and bar retrial if the remaining evidence was insufficient to support the conviction. Compare Lockhart, 488 U.S. at 40-42, 109 S.Ct. 285, with id. at 42-50, 109 S.Ct. 285 (Marshall, J., dissenting). Instead, Lockhart requires an appellate court to step into the shoes of the trial court and to consider all of the evidence admitted before the jury- — whether or not erroneously— to determine if such evidence was sufficient to support the conviction. If so, the Double Jeopardy Clause does not bar retrial. Id. at 42, 109 S.Ct. 285.”
728 So.2d at 1157. Based upon Lindley, the Double Jeopardy Clause will not bar the State from retrying M.L.H. on the charge of first-degree sodomy. The State presented sufficient evidence at trial that M.L.H. committed first-degree sodomy against his stepbrother L.H. Although we are reversing M.L.H.’s conviction because the circuit court erroneously considered some of the evidence presented, Lindley and Lockhart command that the Double Jeopardy Clause does not preclude a retrial on the same charge.
*911 M.L.H. asks this Court to distinguish his case from Lindley and adopt the reasoning found in Justice Almon’s dissent to that case in order to render the first-degree-sodomy charge. Because this Court is bound by decisions of the Alabama Supreme Court, see § 12-3-16, Ala.Code 1975, we are “without authority to overrule the decisions of [that] court.” Jones v. City of Huntsville, 288 Ala. 242, 244, 259 So.2d 288, 290 (1972).
Based on the foregoing, the judgment of the circuit court is due to be, and is hereby, reversed and the case remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
WELCH, P.J., and WINDOM, BURKE, and JOINER, JJ., concur.

. Initials are used throughout the decision to protect the anonymity of the youthful offender, the victim, and the other children. See Rule 52, Ala. R.App. P.

. M.L.H. was charged with both first-degree sodomy and first-degree sexual abuse.

. The Dead Man’s Statute, § 12-21-163, provides:
"In civil actions and proceedings, there must be no exclusion of any witness because he is a party or interested in the issue tried, except that no person having a pecuniary interest in the result of the action or proceeding shall be allowed to testify against the party to whom his interest is opposed as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the action or proceeding or when such deceased person, at the lime of such transaction or statement, acted in any representative or fiduciary relation whatsoever to the party against whom such testimony is sought to be introduced, unless called to testify thereto by the party to whom such interest is opposed or unless the testimony of such deceased person in relation to such transaction or statement is introduced in evidence by the party whose interest is opposed to that of the witness or has been taken and is on file in the case. No person who is an incompetent witness under this section shall make himself competent by transferring his interest to another."

. Rule 601, Ala. R. Evid., provides: "Every person is competent to be a witness except as otherwise provided in these rules.”